

```
                                                                FILED
                                                              MAR 2 3 2007
           UNITED STATES DISTRICT COURT

              DISTRICT OF SOUTH DAKOTA                            CLERK

                 SOUTHERN DIVISION
```

*********************************************************************
\*
FIRST PREMIER BANK,                          \*        CIV 06-4115
                                             \*
                 Plaintiffs,                 \*
                                             \*        ORDER
     -vs-                                    \*
                                             \*
METABANK, fka FIRST FEDERAL                  \*
SAVINGS BANK,                                \*
                                             \*
                 Defendant.                  \*
                                             \*
*********************************************************************

Pending before the Court is Plaintiff's motion to remand this case to the South Dakota Circuit Court, Second Judicial Circuit, Minnehaha County. (Doc. 9.) After the motion to remand was fully briefed by the parties, the Court was notified by Defendant, Metabank, of an amendment to the Homeowners' Loan Act that President Bush signed on October 13, 2006. The parties were allowed to submit briefs regarding the effect the amendment has on diversity jurisdiction in this case. Having received and reviewed the briefs, the Court finds oral argument is unnecessary and, for the following reasons, the motion to remand will be denied.

## BACKGROUND

First Premier Bank ("First Premier") commenced this action against Defendant in state court. First Premier asserts claims for breach of contract, breach of covenant of good faith and fair dealing, fraudulent inducement, fraud, deceit, negligent misrepresentation, fraudulent misrepresentation, conversion, negligence, gross negligence, breach of fiduciary duty and unjust enrichment. The claims arise out of the Defendant's placing of a loan with First Premier. After service of the Summons and Complaint, Defendant removed the action to this Court, alleging that diversity jurisdiction exists under 28 U.S.C. § 1332. First Premier filed the Motion to Remand, arguing that Defendant has failed to establish diversity jurisdiction.

The parties do not dispute that the amount in controversy exceeds $75,000, that First Premier is a state chartered bank with its principal place of business in Sioux Falls, South Dakota, or that Defendant is a federally chartered savings bank with its corporate offices and principal place of business in Storm Lake, Iowa. These facts are set forth in both the Complaint filed by Plaintiff and the Notice of Removal filed by Defendant.

The issue raised by First Premier's motion for remand is whether Defendant is an Iowa citizen for the purpose of diversity jurisdiction. Until the recent amendment to the Homeowners' Loan Act[1], there were no statutory provisions identifying whether and under what circumstances federal savings banks were considered citizens of a particular state for the purpose of determining diversity jurisdiction, or how such state citizenship is determined. When faced with the issue, courts applied a test developed to determine if a federally chartered corporation's activities were sufficiently "localized" to be deemed a citizen of a state. *See, e.g., Loyola Federal Savings Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (The factors considered in deciding if a federally chartered corporation engages in "localized" business activities include "the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in different states, and any other data providing evidence that the corporation is local or national in nature.") *See also J. C. Engelmeyer v. Production Credit Ass'n of the Midlands*, 652 F.Supp. 1235 (D.S.D. 1987) (applying the test to a production credit association chartered under the Farm Credit Act). Defendant submitted information to prove that its activities are sufficiently "localized" in Iowa to make it a citizen of that state. First Premier provided information to show that Defendant has set up operations in more than one state and has directed its activities nationally, thus making Defendant a national citizen incapable of invoking diversity jurisdiction.

While considering the parties' respective positions on the motion to remand, the Court was advised of the amendment to the Homeowners' Loan Act, which was passed as section 403 of the Financial Services Regulatory Relief Act of 2006. The amendment provides:

---

[1]Defendant's charter was issued pursuant to the Homeowners' Loan Act, 12 U.S.C. § 1461.

> SEC. 403. CLARIFYING CITIZENSHIP OF FEDERAL SAVINGS ASSOCIATIONS FOR FEDERAL COURT JURISDICTION.
>
> Section 5 of the Home Owners' Loan Act (12 U.S.C. 1464) is amended by adding at the end the following:
>
> "(x) HOME STATE CITIZENSHIP. - - In determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office.".

The amendment is codified at 12 U.S.C. § 1464(x). It is undisputed that Defendant's Federal Stock Charter provides that "[t]he home office of the savings bank shall be located at Storm Lake, in Buena Vista County, State of Iowa." (Doc. 1, Ex. 4 at ¶ 3.) The issue now before the Court is whether the amendment applies to cases pending at the time of enactment. If it applies, Defendant has established the existence of diversity jurisdiction. Defendant argues that it applies; First Premier argues that it does not apply.

## DISCUSSION

In general, the Supreme Court applies to pending cases a new jurisdictional rule that "simply changes the tribunal that is to hear the case." *Landgraf v. USI Film Products*, 511 U.S. 244, 274 (1994) (amendments to Title VII of Civil Rights Act not applied to cases pending at the time of enactment because amendments affected substantive rights). The Court in *Landgraf* stated:

> We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed. Thus, in *Bruner v. United States*, 343 U.S. 112, 116-117, 72 S. Ct. 581, 584-585, 96 L.Ed. 786 (1952), relying on our "consisten[t]" practice, we ordered an action dismissed because the jurisdictional statute under which it had been (properly) filed was subsequently repealed. [Citations omitted.] Conversely, in *Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 607-608, n. 6, 98 S. Ct. 2002, 2005, n. 6, 56 L.Ed.2d 570 (1978), we held that, because a statute passed while the case was pending on appeal had eliminated the amount-in-controversy requirement for federal-question cases, the fact that respondent had failed to allege $10,000 in controversy at the commencement of the action was "now of no moment." [Citations omitted.] Application of a new jurisdictional rule usually "takes away no

> substantive right but simply changes the tribunal that is to hear the case." *Hallowell [ v. Commons ]*, 239 U.S. 506, 508, 36 S. Ct. 202, [60 L.Ed. 409 (1916) ]. Present law normally governs in such situations because jurisdictional statutes "speak to the power of the court rather than to the rights or obligations of the parties." *Republic Nat. Bank of Miami [v. United States ]*, 506 U.S. [80,] 100, [113 S. Ct. 554, 121 L.Ed.2d 474 (1992)] (Thomas, J., concurring).

*Landgraf*, 511 U.S. at 274. As the language in *Landgraf* reflects, the Supreme Court has readily applied legislation affecting jurisdiction retroactively. Another example of the Supreme Court's application of a statute enlarging jurisdiction is found in *United States v. State of Alabama*, 362 U.S. 602 (1960). There, the government brought a civil rights action against the state of Alabama at a time when such lawsuits against states were barred. The district court dismissed the action, and the court of appeals affirmed. While the case was pending before the Supreme Court, Congress passed the Civil Rights Act of 1960, which allowed such actions against a state. The Supreme Court reversed the dismissal and remanded because, by virtue of the new law, the district court now had jurisdiction.

The Eighth Circuit follows this practice and has applied new jurisdictional statutes to pending cases. *See, e.g., Federal Deposit Ins. Corp. v. Kasal*, 913 F.2d 487 (8th Cir. 1990); *In re Resolution Trust Corp.*, 888 F.2d 57 (8th Cir. 1989). In its original decision filed two days prior to the passage of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), the Eighth Circuit in *In re Resolution Trust Corp.* held that it had no jurisdiction to review a district court order remanding the case to Arkansas state court. The Resolution Trust Corporation ("RTC") filed a timely petition for rehearing arguing that the newly enacted section 501(l)(3) of FIRREA clearly gave the Court jurisdiction to hear the appeal. The Eighth Circuit held that FIRREA applied, stating: "If a case is still pending when the new statute is passed, new procedural or jurisdictional rules will usually be applied to it." *Id.* at 58. The Eighth Circuit exercised jurisdiction over the case. Similarly, in *Kasal*, the Eighth Circuit reversed the district court's ruling that it lacked subject matter jurisdiction over counterclaims against the FDIC -receiver. The case was pending when sections 209(3) and (4) of FIRREA were enacted, giving federal courts jurisdiction to hear counterclaims

4

against the FDIC as receiver of a failed bank. The Eighth Circuit applied the statutes and held that the district court had jurisdiction over the counterclaims. *See Kasal*, 913 F.2d at 493.

It is clear that 12 U.S.C. § 1464(x) should be applied to the present case. By declaring that federal savings banks are citizens of their home state for the purpose of determining diversity jurisdiction, 12 U.S.C. § 1464(x) has nothing to do with substantive rights; it speaks only to the power of the court to hear cases, and it clarifies that federal courts have diversity jurisdiction in certain cases involving federal savings banks.

There is a subclass of statutes that, though jurisdictional, do impose retroactive effect. These are statutes that confer jurisdiction where before there was none. The Supreme Court explained the distinction in *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997) (citations omitted):

> Statutes merely addressing which court shall have jurisdiction to entertain a particular cause of action can fairly be said merely to regulate the secondary conduct of litigation and not the underlying primary conduct of the parties. Such statutes affect only where a suit may be brought, not whether it may be brought at all. The 1986 amendment, however, does not merely allocate jurisdiction among forums. Rather, it creates jurisdiction where none previously existed; it thus speaks not just to the power of a particular court but to the substantive rights of the parties as well. Such a statute, even though phrased in "jurisdictional" terms, is as much subject to our presumption against retroactivity as any other.

*Id.* at 951. First Premier does not specifically cite to *Hughes*, but it repeats language from the case verbatim and argues that 12 U.S.C. § 1464(x) cannot be applied to this case because it "creates jurisdiction where none previously existed." (Doc. 31, p. 7.) That argument simply does not apply to 12 U.S.C. § 1464(x). The amendment in *Hughes*, which expanded the scope of qui tam actions under the False Claims Act, could not be applied to pending cases because it "permitt[ed] actions by an expanded universe of plaintiffs with different incentives" and thereby "essentially creat[ed] a new cause of action" against the defendant. *Id.* The *Hughes* court also relied the fact that the amendment at issue stripped defendants of a complete affirmative defense to private suits--that they

5

had disclosed information voluntarily to the government--a consequence which " 'attach[ed] a new disability in respect to transactions or considerations already past.' " *Id.* (quoting *Landgraf*, 511 U.S. at 269). In contrast, 12 U.S.C. § 1464(x) simply sheds light on the state citizenship of a federal savings bank; it does not create a cause of action or eliminate a defense. Thus, the Court rejects First Premier's argument that the amendment has an improper retroactive effect.

Citing *Mogis v. Lyman-Richey Sand & Gravel Corp.*, 189 F.2d 130 (8th Cir. 1951), First Premier argues that 12 U.S.C. § 1464(x) should not be applied to this case because the statute is "amendatory" and, therefore, it must operate prospectively only, absent strong indication of legislative intent to the contrary. It is true that the Eighth Circuit said amendatory statutes usually operate prospectively, *see id.* at 142, but it just so happened that the statute at issue in *Mogis* was an amendment; the Eighth Circuit drew no distinction between original acts and amendatory acts. *Landgraf, United States v. Alabama* and *Hughes Aircraft* all involved amendatory statutes, as did the *Bruner* and *Andrus* cases cited in the quote from *Landgraf* set forth above in this Memorandum Opinion. None of those cases indicate that a different analysis applies to determine the retroactivity of amendments as compared to original acts. Lacking any supporting authority, First Premier's argument must fail.

In their responsive brief, First Premiere argues that, even if the new jurisdictional statute is applicable to this case, the facts demonstrate that Defendant's home office must be in South Dakota because it transacts so much business in South Dakota through Meta Payment Systems, one of its subsidiaries, and because Metabank's President, J. Tyler Haahr, is a resident of South Dakota. First Premier cites no legal authority for this proposition and the Court is not convinced by this argument. It is undisputed that Defendant's Federal Stock Charter says the bank's home office is in Storm Lake, Iowa.

Under 12 U.S.C. § 1464(x), Defendant Metabank is a citizen of Iowa. With First Premier being a citizen of South Dakota, complete diversity of citizenship exists among the parties and removal of this suit from state court to federal court pursuant to 28 U.S.C. § 1441(a) is proper. Accordingly,

IT IS ORDERED that the Motion to Remand, doc. 9, is denied.

Dated this 23rd day of March, 2007.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: /s/ Linda M. Ziegler
(SEAL)   DEPUTY